WATSON FIREPROOF WINDOW CO. v. BIERSACH & NIEDERMEYER CO.

(Circuit Court of Appeals, Seventh Circuit. June 7, 1916.)

No. 2299.

PATENTS ☜328—VALIDITY—ANTICIPATION.

The Watson patent, No. 702,754, for improvements in windows, the distinctive feature of which was that the fixed part of the bar or muntin against which rest adjacent panes of glass is a flat surface, so that in glazing either pane can be 'slid across the same, and when both are in place are held apart by a rib along the middle of the movable part of the bar or muntin which, when in position, holds the panes in their relative and proper places, *held* not to show invention, being anticipated by disclosures of other patents shown in the prior art.

Appeal from the District Court of the United States for the Eastern District of Wisconsin; Ferdinand A. Geiger, Judge.

Bill by the Watson Fireproof Window Company against the Biersach & Niedermeyer Company. From a decree for defendant, complainant appeals. Affirmed.

The following is the opinion of Geiger, District Judge, in the trial court:

Complainant filed its bill, charging defendant with infringement of letters patent No. 702,754, granted June 17, 1902, to Watson, and assigned to it. The invention relates to "improvements in windows," and "more particularly to fireproof windows of that class which have their frames and casings made of sheet metal," and its object is "to provide an improved construction for securing the glass in place in the windows of this character." The invention is thus described in the drawings and specifications, omitting therefrom matters of detail:

"In the drawings, Figure 1 is a front elevation of a metal window constructed in accordance with my invention and comprising a lower stationary and an upper pivoted or swinging sash, to both of which my improvements are applied. Fig. 2 is a sectional side elevation thereof. Fig. 3 is a top plan section taken through the stationary sash on line *3 3* of Fig. 1. Fig. 4 is a top plan section taken through the swinging sash on line *4 4* of Fig. 1. Fig. 5 is a fragmentary perspective view, indicating the manner of inserting the glass in the sash. Figs. 6, 7, 8, and 9 are top plan sections further showing the manner of inserting the glass in the sash.

"In said drawings, A designates the rectangular outer casing of the window which is designed to be built into the wall of the building B in the usual manner. This casing is herein shown as divided by a transverse bar *a* into upper and lower sections, of which the upper section is in this instance provided with a swinging sash *C*, while the sash *D* of the lower section is made fixed or stationary. It will, however, be understood that in so far as the present invention is concerned it is immaterial whether the window casing comprises one or more sections, or whether the sash of any section is fixed or is arranged to slide or swing, my improvements being equally applicable in either case.

"Extending around the inner margin of each sash is a groove *1*, made of suitable width to receive the edges of the panes of glass *G* and of a depth desirably about equal to its width, except along the upper edge of the sash, where the groove takes the form of an open slot *2*, into which the glass may be thrust considerably farther than the distance which it normally occupies, when in place, Figs. 2 and 5.

"The glass *G* for each sash is provided in a plurality of panes—in this instance two—the aggregate width of which is made somewhat less than the extreme inner width of the sash from the bottom of the groove *1* on one

side to the bottom of the same groove on the other. This permits the glass to be inserted by proceeding in the manner indicated in Figs. 5 to 9, inclusive. The upper edge of the first pane is slipped angularly up through the slot 2, as shown in Fig. 5, and the whole pane is then swung into a vertical position and slipped down until its lower edge enters the groove 1 at the bottom of the sash. The pane then occupies a position such as is indicated in Fig. 6 and

Fig. 4

Fig. 5.

Fig. 6.

Fig. 7.

Fig. 8.

Fig. 9.

can be slipped sidewise until one of its lateral edges enters the groove 1 at the side of the sash, as shown in Fig. 7. This leaves a space between its other lateral edge and the other side of the sash wide enough to receive the second pane, which is then inserted in the same manner as the first pane until it occupies the position shown in Fig. 8, whereupon it is moved sidewise away from the first pane until its lateral edge enters the groove 1 on the other side of the sash, as shown in Fig. 9. The glass is then secured in this position, as follows: Midway between its sides the sash is provided with a vertical bar 3, located in front of the groove 1, with its rear face in the same plane as the front edge of said groove or in line with the front surface of the inserted glass. This bar covers the adjacent edges of the two panes of glass on their front sides and affords a ledge against which these inner edges of the glass rest. Operating in conjunction with this middle sash bar 3 is a clamping bar 4, having forwardly projecting flanges 5, which enter between the panes, so as to prevent their lateral movement, and lateral flanges 6, which project back to the glass and hold it firmly against the front bar 3. This clamping bar is herein shown as secured in place by screws 7, which extend through the bar into screw plates 8 in the front bar 3 and by turning up which the glass may be held between the clamping bar and front plate as tightly as desired. This clamping bar is put in place after the panes have been inserted and moved laterally into their final positions, as shown in Fig. 9, and the tightening of its screws 7 completes the glazing operation.

"One great advantage of the construction described is that it enables the window to be glazed from the inside of the building and does not require any attention or manipulation from without, as is commonly necessary in fireproof windows of this character. Windows so constructed may, furthermore, be made of any desired width and arranged to contain as many panes of glass as may be necessary to glaze the desired width of the sash, without regard to the width of the panes, since it is only necessary to provide as many additional bars 3 and 4 as are needed in clamping the adjacent edges of each pair of panes. Obviously many changes may be made in the details of the construction shown without departure from the broad spirit of the invention claimed."

There has been much discussion of the question whether Watson invented a "fireproof" window—complainant asserting that he did; defendant that he did not. Of course the problem of defining a fireproof window, the inclusion of features necessary, and the exclusion of those unnecessary, to constitute such a structure, is not before the court for solution. Common observation teaches us that, after all, structures are "fireproof" as a matter of degree only. The term expresses the quality of one structure to withstand the stress of fire relatively to, or by comparison with, those which are deemed flammable or not so capable to withstand it. Therefore, in the present case, it may be conceded that a metal sash window with wire glass is, acceptably, a "fireproof window," simply because the materials are noninflammable. But upon the issues here the question is of importance, because upon its answer may depend the scope of the art to which reference may be had in determining the quality of Watson's endeavors—whether he invented anything, or merely selected and adapted to his structure well-known features. Upon the specifications and drawings Watson's invention is thus embodied in the first of the four claims of the patent:

"In a window, the combination of a plurality of panes of glass, of a sash grooved to inclose said panes of glass, a bar fixed to and extending across the sash in front of the plane of the groove and past which the panes may be slid lateral portions of the groove, a clamping bar interposed between the panes when slid into the side grooves and bearing against their adjacent edges opposite to the fixed bar, and means for detachably securing the clamping bar in place, substantially as described."

The second claim differs only in narrowing the "means for detachably securing the clamping bar" to "clamping *screws*," while the third and fourth claims differ substantially from the first and second, in respectively incorporating a "metal" sash. The five elements of the combination are therefore: (1) The plurality of the panes of glass; (2) the grooved sash for their inclosure; (3) the bar fixed to and extending across the sash in front of the plane of groove,

past which the panes may be slid laterally to introduce or withdraw them; (4) the clamping bar interposed between the panes; (5) the means for securing the clamping bar.

In determining the scope of the art to which Watson must be held, there are several considerations which are, I believe, controlling, in support of the conclusion that the invention, as claimed, is not a "fireproof window": First, his statement that his invention relates "to improvements in windows," and "more particularly to fireproof windows of that class which have their frames made of sheet metal," with the object of providing "improved construction for securing the glass in place in windows of this character"; secondly, the fact that a "metal" sash appears as an element in claims 3 and 4 and not in claims 1 and 2, taken in connection with the substantial identity of the claims as to other elements, as already indicated, shows, no matter what may be said of their validity, that the claimed improvement relates to an extended art; third, the rejection by the Patent Office of a claim for a fireproof window, for which no substitute claim now appears in the patent.

It may be, as contended by plaintiff, that Watson had in view the adaptability of his structure to the use of wire glass through which the fireproof quality would be greatly strengthened and more nearly approach perfection; that any expectation of its utility in such combined use has been realized through the advent and extensive use of that kind of glass. But his real invention is neither more nor less than he has declared—an improvement in windows—and there is open for consideration the entire art relating to sash for windows or window structure. Therefore the references cited by defendant, hereafter referred to, are deemed relevant.

Now in taking this view, defendant refers us to numerous structures of the prior art, ranging from simple forms of wooden sash structures of doors and windows to rather complex forms of fireproof windows and of sash in use in sky windows. No reason is perceived why these references are not pertinent, or why the more fundamental art of *glazing joinery* should not be consulted to determine the fund of information presumably possessed by mechanics in that art, in order to answer the question respecting Watson's alleged invention. Therefore the Sheldon patent, though for a screen door disclosing the form and arrangement of grooves for panels, and Short's disclosure, in a wooden window sash, of a removable muntin, are not to be discarded, in considering Watson's structure as one not necessarily fireproof. But an examination of the Hayes, the Bickelhoupt, the Rendle, and the Coulson patents shows, in my judgment, that Watson really does no more than to select from them, respectively, elements now found in his claims. Certainly the muntin of Watson differs from Short only in the fact that in the one the rib is upon the fixed, in the other upon the removable, part. The grooves are alike, both in arrangement and shape, in Watson, Sheldon, and Hayes. Watson's feature of deepening one groove to receive the pane and to enable its being lifted, then lowered, into the opposite groove, is disclosed and expressly claimed by Hayes.

With respect to the clamping bar and the means for securing it, and which is claimed "substantially as described," I am unable to find any difference in the disclosure shown by Watson in Figure 3, supra, and Figures 17 and 18, viz.:

and those made by Coulson, patent 429,375, and Rendle, No. 1,372 (British), viz.:

(1) Figure 8, Coulson Patent, No. 429,375.

(2) Figures 1, 6, and 7 of the Rendle Patent, No. 1,372 (British).

Fig. 8.

Fig. 1.

Fig. 7.

Fig. 6.

Every element found in Watson's structure appears in one or more of these references; and while Rendle's adaptation is limited to a "structure for horticultural purposes," and Coulson describes his as a "glazed structure," their pertinency, as already indicated, must be accepted if we regard Watson's efforts to have been exerted in the glazing art, rather than limited to such windows as are found on the sides of ordinary dwellings or buildings. To my mind, one seeking to perfect a structure wherein the mullion or the panes are easily removable would at once be referred to that branch of the art wherein that kind of structure was in greater demand, irrespective of the fireproof quality, and skylight and horticultural structures are in that branch. The contention of defendant, that the patent in suit is void for want of invention, must be upheld. It may be that Short and Sheldon, upon reproduction of their respective structures, are far from Watson in physical appearance; but, when the numerous later structures are added thereto, there is a sum total of mechanical elements in the art which forbids Watson's claims upon any theory except that of aggregation or selection. Every feature is not only suggested, but worked out; and even if Watson's precise combination is not disclosed in any one alone of the many references, its production is, in my judgment, attained through the exercise of mechanical skill, and has not the quality of inventive novelty.

The third and fourth claims, in adding the element of a "metal" sash, must fall with the first two.

The conclusion is that the patent is void, and that a decree in favor of the defendant be entered accordingly.

W. Clyde Jones and Albert H. Graves, both of Chicago, Ill., for appellant.

John G. Elliott, of Chicago, Ill., for appellee.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

ALSCHULER, Circuit Judge. This is an appeal from a decree of the District Court holding void letters patent No. 702,754 to Watson, granted June 17, 1902, for certain "improvements in windows," and

dismissing bill of appellant charging infringement thereof. A description of the patent, with cuts showing its illustrative drawings, appears in the opinion of the District Court, which is found on pages 211–221 inclusive of the printed transcript of record herein [see above]. That opinion considers the disclosures of various patents shown in the prior art, notably the Short, Sheldon, Hayes, Rendle, and Coulson patents, and from careful examination of these and of all the evidence we are satisfied that the District Court properly reached its stated conclusion that the patent in issue "has not the quality of inventive novelty."

One of the distinctive features of the Watson patent is that the fixed part of the bar or muntin, against which rest adjacent panes of glass, is a flat surface, so that, in glazing, either pane can be slid across the same, and, when both are in place, are held apart by a rib along the middle of the movable part of the bar or muntin, which, when in position, holds the panes in their relative and proper places. Distinguishing the Watson from the Short structure in this regard, it is said in the opinion:

"Certainly the muntin of Watson differs from Short in the fact that in the one the rib is upon the fixed, and in the other upon the movable, part."

In this respect the opinion fails to point out the full disclosure of the Short patent, which was granted for improvements in setting glass, and in the sash therefor; for, while it might possibly be concluded from its drawings that the rib is on the fixed part, the specification of that patent discloses it may be upon either—the language there employed being:

"The inner face of the binding pieces has a rib down through the center to separate the glass, or instead thereof there may be a rib on the stationary part."

Barring only the raised center rib on the fixed part of the muntin shown in the Sheldon patent, it shows the entire novelty claimed by Watson. It has the slots or grooves in the three sides, that on the upper side being abnormally deepened for projecting the panel therein and dropping it into the lower slot. It shows, also, some play or sliding space on the fixed part of the muntin, on either side of the rib thereon, so that the panel, being inserted in the upper and lower grooves, may then be slid into the groove on the side opposite the muntin.

It is claimed that the Sheldon patent, being for a combined screen and storm door, is not in an analogous art. It would be entirely feasible to have glass panes for the solid or storm panels of such doors; but whether of glass or of any other weather resisting material, transparent or opaque, means for conveniently inserting and holding in place the panels of such doors cannot be said to be irrelevant to the art of inserting and holding in place the glass panes of windows.

For the reasons set forth in the opinion of the District Court, supplemented by what is here said, the decree is affirmed.